COLORADO COURT OF APPEALS                                    2017COA125

---

Court of Appeals No. 14CA0960
El Paso County District Court No. 13CR2514
Honorable Robin L. Chittum, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Brandon Chad Cockrell,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE NIETO*
Román and Navarro, JJ., concur

Announced October 5, 2017

---

Cynthia H. Coffman, Attorney General, Jillian J. Price, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1    Defendant, Brandon Chad Cockrell, appeals the judgment entered on jury verdicts finding him guilty of first degree murder and two violent crime sentence enhancers.  We affirm.

## I.  Background

¶ 2    Two mountain bikers found the victim while they were riding on a trail just outside of Colorado Springs and stopped to help.  At about the same time, a couple driving down the road also saw the victim and stopped to help.  The victim was dressed only in his underwear and socks and had injuries to his neck and chest.  The bystanders began asking him questions about what had happened and who had shot him, and, in an effort to keep him awake until help could arrive, asked him more general questions about his background and life.  The victim told them he was dying, but was able to answer their questions and said that he knew who had shot him.  He did not, however, provide the shooter's name.

¶ 3    When the paramedics arrived, they loaded the victim into the ambulance and rushed him to the hospital.  An officer rode in the front of the ambulance and asked the victim questions about what had happened and who had shot him.  The victim eventually identified Cockrell as the shooter.

¶ 4    By the time he arrived at the hospital, the victim was barely conscious.  He had eleven gunshot wounds.  He died soon thereafter during surgery.

¶ 5    Cockrell was ultimately arrested and charged with first degree murder and two crime of violence sentence enhancers.  No DNA, fingerprint, or other forensic evidence tied Cockrell to the victim's murder.  The primary evidence against him was the victim's dying declaration identifying Cockrell as the shooter and a bystander's statement that he saw a car leaving the area around the same time the victim was found that matched the description of the car Cockrell drove.

¶ 6    In a detailed and well-supported order, the trial court denied Cockrell's motions to suppress the dying declaration and to find section 13-25-119, C.R.S. 2017, unconstitutional.

¶ 7    A jury found Cockrell guilty as charged.  The court sentenced him to a term of life without the possibility of parole in the custody of the Department of Corrections.

## II.  Facial Constitutional Challenge

¶ 8    Cockrell contends that section 13-25-119, the dying declaration statute, is unconstitutional on its face because it

violates the Confrontation Clause under the principles established in *Crawford v. Washington*, 541 U.S. 36 (2004). We disagree.

¶ 9 We review the constitutionality of a statute de novo. *People v. Helms*, 2016 COA 90, ¶ 15. Statutes are presumed to be constitutional. *Id.* Therefore, the party challenging them has the burden of proving they are unconstitutional beyond a reasonable doubt. *Id.*

¶ 10 The Sixth Amendment to the United States Constitution and article II, section 16 to the Colorado Constitution protect a defendant's right to confront the witnesses against him. This right requires that a defendant be given a meaningful opportunity for effective cross-examination. *People v. Dunham*, 2016 COA 73, ¶ 25.

¶ 11 Section 13-25-119(1) provides the requirements for admitting the dying declarations of a decedent at trial. In *Crawford*, the Supreme Court held that "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." 541 U.S. at 59.

¶ 12 Neither the United States Supreme Court nor the Colorado Supreme Court has spoken directly on the tension between the

dying declaration exception to the hearsay rule and the general principle articulated in *Crawford*.  But in a footnote in *Crawford,* the Court said:

> The one deviation we have found involves dying declarations.  The existence of that exception as a general rule of criminal hearsay law cannot be disputed.  Although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are.  We need not decide in this case whether the Sixth Amendment incorporates an exception for testimonial dying declarations.  If this exception must be accepted on historical grounds, it is *sui generis*.

*Id.* at 56 n.6 (citations omitted).

¶ 13    Also, in *Giles v. California*, 554 U.S. 353, 358 (2008), the Court stated, "[w]e have previously acknowledged that two forms of testimonial statements were admitted at common law even though they were unconfronted.  The first of these were declarations made by a speaker who was both on the brink of death and aware that he was dying." (Citations omitted.)  In this same case, the Court, while discussing the common law doctrine of forfeiture by wrongdoing, twice referred to dying declarations as an exception to the Confrontation Clause.  *See id.* at 361-63.

4

¶ 14 It is generally accepted that the Confrontation Clause should be read to include only those exceptions that existed at the time of its adoption. *Crawford,* 541 U.S. at 54 (The Sixth Amendment allows "only those exceptions established at the time of the founding."); *see People v. Monterroso,* 101 P.3d 956, 972 (Cal. 2004); *Wisconsin v. Beauchamp,* 796 N.W.2d 780, 784-85 (Wis. 2011). The most notable exception at that time was the admissibility of dying declarations. *See Davis v. Florida,* 207 So. 3d 142, 160 (Fla. 2016); *Hailes v. Maryland,* 113 A.3d 608, 620 (Md. 2015).

¶ 15 A dying declaration "is admissible as an exception to the hearsay rule because it poses a guarantee of trustworthiness based on the assumption that the belief of impending death excludes the possibility of fabrication by the declarant." *People v. Gilmore,* 828 N.E.2d 293, 301 (Ill. App. Ct. 2005). Also, precluding the admission of dying declarations would, in many cases, result in "a manifest failure of justice." *Mattox v. United States,* 156 U.S. 237, 244 (1895); *accord Carver v. United States,* 164 U.S. 694, 697 (1897); *see Hailes,* 113 A.3d at 622 ("[T]he Confrontation Clause does not apply to dying declarations, not because dying declarations are

5

inherently reliable, but instead because excluding dying declarations for lack of cross-examination would result in a failure of justice.").

¶ 16    Thus, most jurisdictions that have considered the issue have held that dying declarations are not subject to the Confrontation Clause and, therefore, not subject to *Crawford*.  *See Monterroso*, 101 P.3d at 972; *Davis*, 207 So. 3d at 161; *Sanford v. State*, 695 S.E.2d 579, 584 (Ga. 2010); *Gilmore*, 828 N.E.2d at 302; *Wallace v. State*, 836 N.E.2d 985, 996 (Ind. Ct. App. 2005); *State v. Jones*, 197 P.3d 815, 822 (Kan. 2008); *Hailes*, 113 A.3d at 621; *Commonwealth v. Nesbitt*, 892 N.E.2d 299, 310-11 (Mass. 2008); *People v. Taylor*, 737 N.W.2d 790, 795 (Mich. Ct. App. 2007); *State v. Minner*, 311 S.W.3d 313, 323 n.9 (Mo. Ct. App. 2010); *Harkins v. State*, 143 P.3d 706, 711 (Nev. 2006); *People v. Clay*, 926 N.Y.S.2d 598, 608-09 (N.Y. App. Div. 2011); *State v. Calhoun*, 657 S.E.2d 424, 427-28 (N.C. Ct. App. 2008); *State v. Ray*, 938 N.E.2d 378, 386 (Ohio Ct. App. 2010); *State v. Lewis*, 235 S.W.3d 136, 147-48 (Tenn. 2007); *Gardner v. State*, 306 S.W.3d 274, 288 n.20 (Tex. Crim. App. 2009); *Beauchamp*, 796 N.W.2d at 784-85; *see also United States v. Jordan*, No. 04-CR-00229-LTB, 2014 WL 1796698, at *2 (D. Colo.

6

May 6, 2014) (unpublished opinion) (having previously determined that the defendant's statements were dying declarations but were inadmissible under *Crawford*, the court revisited the issue in light of the defendant's motion for a new trial and his objection to the government's motion to introduce new evidence, and acknowledged the numerous post-*Crawford* decisions recognizing dying declarations as an exception to the Confrontation Clause before holding that the victim's dying declarations were admissible), *aff'd*, 806 F.3d 1244 (10th Cir. 2015). *But see United States v. Mayhew*, 380 F. Supp. 2d 961, 965–66 (S.D. Ohio 2005) (rejecting the argument that dying declarations are an exception to the Confrontation Clause but nonetheless admitting them under the theory of forfeiture by wrongdoing).

¶ 17      We agree with the reasoning of these courts and hold that dying declarations are an exception to the Confrontation Clause and to *Crawford*. In the unique instance of dying declarations, we need not consider whether the statement was testimonial or nontestimonial. *See Nesbitt*, 892 N.E.2d at 311. Therefore, the dying declarations statute does not violate the mandate in *Crawford*, and it is constitutional.

¶ 18    Accordingly, we reject Cockrell's contention that the trial court erred by admitting the victim's dying declarations because they violated the Confrontation Clause.

## III.  Admission of Evidence

¶ 19    Cockrell also contends that the victim's statement did not satisfy the statutory requirements for admission provided by section 13-25-119.  We disagree.

¶ 20    We review the trial court's decision to admit evidence for an abuse of discretion.  *People v. Phillips*, 2012 COA 176, ¶ 63.  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on a misapplication or misinterpretation of the law.  *People v. McFee*, 2016 COA 97, ¶ 17.  To the extent this contention raises issues of statutory interpretation, we review those contentions de novo.  *Bly v. Story*, 241 P.3d 529, 533 (Colo. 2010).  In interpreting statutes, "[o]ur primary objective is to effectuate the intent of the General Assembly by looking to the plain meaning of the language used, considered within the context of the statute as a whole."  *Id.*

¶ 21    Section 13-25-119(1) provides that the dying declarations of a deceased individual are admissible at trial if it is shown

(a) That at the time of the making of such declaration he was conscious of approaching death and believed there was no hope of recovery;

(b) That such declaration was voluntarily made, and not through the persuasion of any person;

(c) That such declaration was not made in answer to interrogatories calculated to lead the deceased to make any particular statement;

(d) That he was of sound mind at the time of making the declaration.

¶ 22     The parties agree that the victim believed he was going to die. He had eleven gunshot wounds and death was imminent. He even made statements indicating he feared he was going to die. Thus, the first statutory element was satisfied.

¶ 23     As to the second element, the voluntariness of the victim's statements, Cockrell asserts that the victim only identified Cockrell as the shooter after repeated questioning by bystanders, paramedics, and a police officer. He contends that this amounted to "impermissible persuasion." The trial court found that the questions were designed, primarily, to keep the victim talking and to keep him alive. It also found that the officer's questions in the ambulance "were open-ended questions. . . . [T]here is no evidence

of pressuring [the victim] or demanding an answer.  He simply answered, and moved on to the next question."

¶ 24    Cockrell suggests that a statement made after repeated questioning is not voluntary.  This is not how our courts have interpreted that phrase.  As in other contexts, we determine if a statement is voluntary by looking at whether any coercion or improper tactics were used.  In *People v. Mackey*, 185 Colo. 24, 30-31, 521 P.2d 910, 914 (1974), the supreme court held that the mere fact that the victim was asked who shot him and details about where and how it happened did not render his dying declaration involuntary.  In this context, we do not interpret "voluntary" as synonymous with spontaneous.

¶ 25    Having reviewed the record, we conclude that the trial court did not err in finding that the victim's statements, though made in response to repeated questioning, were voluntarily made.

¶ 26    Regarding the third element, the record shows that the questions asked of the victim were open-ended: Who shot you?  What happened?  None of these questions led the victim to a particular answer or to identify a particular person.  Rather, they were questions designed to gather facts, with no apparent pretense

10

involved.  Accordingly, we conclude that the record supports the trial court's finding that the third element was satisfied.

¶ 27    Finally, we look at the finding that the victim was of sound mind when he made his declarations.  There was evidence that the victim was in a great deal of pain and that he was having trouble breathing.  There was also evidence that he began to drift off at times.  However, everyone who was present when the victim made the statements and who testified at trial stated that the victim was conscious and alert and was answering the questions appropriately.

¶ 28    Therefore, we conclude that the record supports the trial court's finding that the fourth element was satisfied.

¶ 29    Accordingly, we conclude that the trial court did not abuse its discretion by admitting the victim's dying declarations under section 13-25-119.

## IV.  Sufficiency of the Evidence

¶ 30    Lastly, Cockrell contends that there was insufficient evidence to support his first degree murder conviction.  We disagree.

¶ 31    We review the sufficiency of the evidence de novo, applying the substantial evidence test.  *See People v. Serra*, 2015 COA 130, ¶ 18.

11

A reviewing court faced with a sufficiency challenge must determine whether the evidence, when viewed as a whole and in a light most favorable to the prosecution, is both substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the charge beyond a reasonable doubt.

*Id.* "The evidence is sufficient if, after viewing the evidence in the light most favorable to the prosecution, a rational jury could have found the essential elements of the crime beyond a reasonable doubt." *People v. Boulden*, 2016 COA 109, ¶ 6.

¶ 32     Here, the strongest evidence against Cockrell was the victim's dying declaration identifying Cockrell as the shooter, which we have already determined to be admissible.  It was for the jury to evaluate the evidence (or lack thereof) presented, weigh the credibility of witness testimony, and apply the law as instructed.  *See People v. Zaring*, 190 Colo. 370, 371-72, 547 P.2d 232, 233 (1976); *People v. Harris*, 2016 COA 159, ¶ 78; *People v. Whittiker*, 181 P.3d 264, 277 (Colo. App. 2006).  And it was rational, based on the evidence presented, for the jury to have found Cockrell guilty as charged. *See Ortega v. People*, 161 Colo. 463, 466-67, 423 P.2d 21, 23 (1967) ("If a witness has the capacity 'to observe, recollect, and

12

communicate, and some sense of moral responsibility,' his testimony should be left for jury evaluation. . . . That [the victim] alone testified to the identity of [the defendant] does not necessarily create a case of insufficiency of evidence. This court has held . . . that the testimony of one witness identifying the accused as being present and participating in the crime was sufficient to take the issue to the jury." (quoting *State v. Leonard*, 244 N.W. 88, 88-89 (S.D. 1932))); *People v. Plancarte*, 232 P.3d 186, 192 (Colo. App. 2009); *see also Beauchamp*, 796 N.W.2d at 795 (conviction affirmed where evidence included a dying declaration identifying the defendant and there was no fingerprint, DNA, or ballistics evidence).

¶ 33 Therefore, we conclude that the evidence was sufficient to sustain Cockrell's conviction.

## V. Conclusion

¶ 34 The judgment is affirmed.

JUDGE ROMÁN and JUDGE NAVARRO concur.